UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| ANNETTE SHARLENE ELDER-EVINS, | No. C 09-05775 SBA (LB) |
|---|---|
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTIONS TO EXCLUDE AND TO QUASH, GRANTING DEFENDANT'S MOTION TO PRESENT ORAL TESTIMONY, AND SETTING EVIDENTIARY HEARING ON SEPTEMBER 27, 2012** |
| v. | |
| MICHAEL J. CASEY, *et al.*, | |
| Defendants. | |
| | [Re: ECF Nos. 115, 187, 200, 207, 214] |

_____/

**I. INTRODUCTION**

The district court referred Defendant Officer Daniel Shacklett's motion for a determination of Plaintiff Annette Sharlene Elder-Evins's competence to this court for a report and recommendation. The parties subsequently filed additional motions regarding the evidence to be introduced during the hearing. The court held a hearing on the motions on June 21, 2012. For the reasons set forth below, the court grants in part and denies in part the parties' four requests for judicial notice, denies Plaintiff's motions to exclude medical records and medical testimony and to quash Defendant's subpoena to Dr. Donald Apostle, grants Defendant's motion to present the oral testimony of Dr. Apostle, and sets an evidentiary hearing for September 27, 2012, at 2 p.m.

**II. BACKGROUND**

On or about March 17, 2009, Plaintiff was arrested on her property and charged with violating California Penal Code § 148(a)(1) for resisting arrest. *See* First Amended Complaint ("FAC"), ECF No. 79 at 16. In April 2009, Plaintiff made her first appearance for these charges in Sonoma County Superior Court. *See* Plaintiff's 2/9/2012 RJN, ECF No. 203, Ex. B at 1.[1] At that time, the court appointed a public defender pursuant to California Penal Code § 1368. *Id*. This statute requires a court to appoint an attorney for a defendant in a criminal case if a doubt arises in the mind of the judge as to the defendant's mental competence. The court also appointed Dr. Donald Apostle, a psychologist, to evaluate Plaintiff to determine whether she was competent to stand trial. *Id*.

After Dr. Apostle had conducted his evaluation, the court dismissed the charges against Plaintiff pursuant to California Penal Code § 1385, which allows a court to dismiss charges against a defendant "in the interest of justice." *Id*. at 2. While the court had previously appointed an attorney for Plaintiff, it cited neither California Penal Code § 1368 nor California Penal Code § 1370.2, which governs dismissal of misdemeanor charges against defendants who are found incompetent, when it dismissed the charges against Plaintiff. *See id*.

On December 9, 2009, Plaintiff, proceeding *pro se*, filed this action. Original Complaint, ECF No. 1. She filed a First Amended Complaint on October 25, 2010. FAC, ECF No. 79. Essentially, she claims that she was mistreated in the course of her March 17, 2009 arrest. *See generally* FAC, ECF No. 79. The district court dismissed all claims in Plaintiff's First Amended Complaint except for a claim against Defendant for excessive force. 1/31/11 Order, ECF No. 106 at 12-13.

On April 4, 2011, Defendant moved for an order finding Plaintiff incompetent to proceed *pro se* in this action. Defendant's Motion for Competency Determination, ECF No. 115. On June 28, 2011, the district court referred Defendant's motion to a magistrate judge for a report and recommendation, and the motion was assigned to the this court. Order of Reference, ECF No. 148. The court set a hearing on the motion for August 25, 2011 and noted that Plaintiff would have the opportunity to express any objections to an appointment of a *guardian ad litem* and present any evidence, written or testimonial, that is relevant to the court's determination of her competency to

---

[1] The court addresses the parties' requests for judicial notice in detail *infra*.

proceed without an attorney in this matter. 7/29/2011 Order, ECF No. 156. Thereafter, the court recommended that the district court refer Plaintiff to the Federal Pro Bono Project so that an attorney could be appointed to assist Plaintiff for the purpose of the opposing Defendant's motion for a competency hearing and presenting evidence at the competency hearing. 8/10/2011 Order, ECF No. 160. In light of this decision, the court continued the competency hearing to November 17, 2011. *Id*.

Attorney Michael Esser was appointed to assist Plaintiff with respect to the competency proceedings. Notice of Appearance, ECF No. 168. In order to give him time to get up to speed, the court continued the hearing on Defendant's motion to December 15, 2011. 10/12/2011 Order, ECF No. 176. Then, because of various scheduling and logistical conflicts raised by the parties, the court continued the hearing several more times, and it ultimately was set for June 21, 2012. 11/7/2011 Order, ECF No. 184; 12/15/2011 Order, ECF No. 190; 2/12/2012 Order, ECF No. 204; 4/25/2012 Clerk's Notice (ECF entry only). The parties also filed several evidentiary motions, and they were set for hearing on the same day as Defendant's motion for a competency determination. Specifically, Plaintiff moved to exclude Dr. Apostle's records and to quash Defendant's subpoena of him, and Defendant moved for an order allowing Dr. Apostle to testify at the competency hearing.

The court conducted a hearing on the motions on June 21, 2012. It was attended by Defendant's counsel, John Fritsch, and Plaintiff's counsel, Michael Esser.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 17 governs the capacity of parties to sue or be sued in federal court. It directs courts to look to the law of the state of the individual's domicile to determine whether that party has capacity to participate as a party in the litigation. Fed. R. Civ. P. 17(b)(1). In California, a party is incompetent if he or she lacks the capacity to understand the nature or consequences of the proceeding, or is unable to assist counsel in the preparation of the case. *See In re Jessica G.*, 93 Cal. App. 4th 1180, 1186 (2001) (applying this standard to dependency proceedings); *see also* Cal. Prob. Code § 1801 and Cal. Pen. Code § 1367; *In re Sara D.*, 87 Cal. App. 4th 661, 666-67. A court may find a party incompetent only if a preponderance of the evidence supports such a finding. *See Jessica G.*, 93 Cal. App. 4th at 1186.

Rule 17 also provides that the court "must appoint a *guardian ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).  When a "substantial question exists regarding the mental competence of a party proceeding *pro se*," courts should "conduct a hearing to determine whether or not the party is competent, so that a representative may be appointed if needed." *See Krain v. Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989); *see also Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005).  If the party does not cooperate in the determination, the district court has discretion to dismiss the case without prejudice.  *Krain*, 880 F.2d at 1121 (citing *Bodnar v. Bodnar*, 441 F.2d 1103, 1104 (5th Cir. 1971)).  The district court may also appoint a lawyer to represent the party.  *Id.* (citing *Westcott v. United States Fidelity & Guaranty Co.*, 158 F.2d 20, 22 (4th Cir. 1946)).  A *guardian ad litem* may be appointed for an incompetent adult only (1) if he or she consents to the appointment or (2) upon notice and hearing.  *See Jessica G.*, 93 Cal. App. 4th. at 1187-88.

## IV. DISCUSSION

**A. Requests for Judicial Notice**

Because the parties have filed four requests for judicial notice, the court addresses them first and in turn below.

<u>1.  Defendant's April 4, 2011 Request for Judicial Notice</u>

In a request accompanying his motion for a competency hearing, Defendant asks the court to take judicial notice of "the following facts" pursuant to Federal Rule of Evidence 201: (1) "[t]hat the subpoenaed records of Donald T. Apostle, M.D. were filed with the court under seal pursuant to this court's order's dated March 10, 2011"; and (2) "[o]f the facts set out in the subpoenaed records of Donald T. Apostle, M.D. filed with the court under seal pursuant to this court's order dated March 10, 2011." Defendant's 4/4/2011 RJN, ECF No. 116 at 1-2.  Plaintiff opposes Defendant's request.  Plaintiff's Opposition to Defendant's 4/4/2011 RJN, ECF No. 200.

Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A "high degree of indisputability is the essential

prerequisite" to taking judicial notice and "the tradition [of taking judicial notice] has been one of caution in requiring that the matter be beyond reasonable controversy." Fed. R. Evid. 201(a) & (b) advisory committee's notes (emphasis added).  A court, then, may take judicial notice of undisputed facts contained in public records, but it may not take judicial notice of disputed ones.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also Muhammad v. California*, C-10-1449-SBA, 2011 WL 873151, at *4 (N.D. Cal. Mar. 11, 2011) (denying request for judicial notice of an address contained on a complaint filed in another case because the "underlying facts relevant to Plaintiff's residence are disputed and otherwise do not meet the requirements of Rule 201").

The court takes judicial notice of the fact that Defendant filed Dr. Apostle's subpoenaed records under seal pursuant to a court order because this information is generally known and readily determined by looking to the electronic case file in this case.  *See* 3/11/2011 Order, ECF No. 112; Document E-Filed Under Seal, ECF No. 113; *see also Lee v. Bender*, C-04-2637-SBA, 2005 WL 1388968, at *8 (N.D. Cal. May 11, 2005) ("Court filings and orders are the type of documents that are properly noticed under Federal Rule of Evidence 201.  Notice can be taken, however, 'only for the limited purpose of recognizing the judicial act that the order [or filing] represents on the subject matter of the litigation.'") (quoting *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (citation and internal quotation marks omitted).

But as Plaintiff correctly points out, the "facts" set out in those records are not matters properly subject to judicial notice because they are disputed, are not so commonly known in the community as to make it unnecessary to prove them, and are not found within a source of indisputable accuracy.  *See* Plaintiff's Opposition to Defendant's 4/4/2011 RJN, ECF No. 200 at 8-9; *see also N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ.*, 600 F.3d 1104, 1113 n.7 (9th Cir. 2010) (denying judicial notice of facts contained in declaration from children that included observations regarding their behavior from parents and special education teachers); *Lee*, 250 F.3d at 689-90; *Muhammad*, 2011 WL 873151, at *4.  As such, the court will not take judicial notice of the "facts" contained in Dr. Apostle's subpoenaed records.

2.  Plaintiff's February 9, 2012 Request for Judicial Notice

1    In a request that accompanies her opposition to Defendant's motion for a competency hearing,
Plaintiff asks the court to take judicial notice of (1) "a true and correct copy of the docket in
Superior Court of California, County of Sonoma, Criminal Docket No. SCR-473862, spanning
October 1, 2005, through January 19, 200, certified by the Clerk of the Court on February 6, 2012";
and (2) "a true and correct copy of the docket in Superior Court of California, County of Sonoma,
Criminal Docket No. SCR-560168, spanning March 17, 2009, through June 22, 2009, certified by
the Clerk of the Court on February 6, 2012." Plaintiff's 2/9/2012 RJN, ECF No. 203 at 1-2.
Defendant has not opposed Plaintiff's request.

These dockets are from prior criminal actions involving Plaintiff, and they "can be accurately
and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R.
Evid. 201(b)(2). Indeed courts regularly take judicial notice, under Rule 201, of judgments, orders,
actions and oral argument transcripts from other courts for this reason. *See*, *e.g.*, *Engine Mfrs. Ass'n
v. S. Coast Air Quality Mgmt. Dist.*, 498 F.3d 1031, 1039 n.2 (9th Cir. 2007) (taking judicial notice
of oral argument transcript); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial
notice of a state court decision and the briefs filed in that court); *Conopco, Inc. v. Roll Int'l*, 231
F.3d 82, 86 n.3 (2nd Cir. 2000) (taking judicial notice of judgment and Notice of Appeal from
related state court action); *Mike's Train House, Inc. v. Lionel*, LLC, 472 F.3d 398, 411-12 (6th Cir.
2006) (citing a string of authorities that have taken judicial notice of judgment and/or records from
other cases). Accordingly, the court takes judicial notice of them.

3. Defendant's March 3, 2012 Request for Judicial Notice

In a request accompanying his opposition to Plaintiff's motion to exclude Dr. Apostle's
subpoenaed records, Defendant asks the court to take judicial notice of: (1) "the court's file
containing ADMINISTRATIVE MOTION FOR ORDER TO SEAL RECORDS OF DONALD T.
APOSTLE, M.D. and order thereon (Dkt. ## 110 & 112)"; (2) "SECOND ADMINISTRATIVE
MOTION FOR ORDER TO SEAL RECORDS OF DONALD T. APOSTLE, M.D. and order
thereon (Dkt. ## 193 & 196)"; and (3) "January 31, 2011 ORDER GRANTING MOTION TO
DISMISS 12:19-21 (Dkt. # 106)." Defendant's 3/3/2012 RJN, ECF No. 209 at 1-2. Plaintiff
opposes Defendant's request but only to the extent that Defendants asks the court to take judicial

notice of "the court's file," which contains Dr. Apostle's subpoenaed records. Plaintiff's Opposition to Defendant's 3/3/2012 RJN, ECF No. 218.

As explained above, courts regularly take judicial notice, under Rule 201, of briefs and courts orders because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See*, *e.g.*, *Engine Mfrs. Ass'n*, 498 F.3d at 1039 n.2; *Holder*, 305 F.3d at 866; *Conopco*, 231 F.3d at 86 n.3; *Mike's Train House*, 472 F.3d at 411-12; *see also* Fed. R. Civ. P. 201. Thus, the court will take judicial notice that the briefs and orders specified above were filed in this action. However, for the reason explained above, the court will not take judicial notice of "the court's file" or any "facts" contained in Dr. Apostle's subpoenaed records. *See N.D.*, 600 F.3d at 1113 n.7; *Lee*, 250 F.3d at 689-90; *Muhammad*, 2011 WL 873151, at *4.

4.  Defendant's April 25, 2012 Request for Judicial Notice

In a request accompanying his opposition to Plaintiff's motion to quash Defendant's subpoena of Dr. Apostle, Defendant asks the court to take judicial notice of: (1) "Document 117: Declaration of John J. Fritsch and Exhibits thereto in support of Motion re Competency of Annette Sharlene Elder-Evins"; (2) "Documents 110 and [110]-1: Administrative Motion and supporting Declaration of John J. Fritsch and exhibits thereto"; (3) "Document 119: 'Judicial Notice of Subpoenas'"; (4) "Document 120: Motion to Compel Release of Raw Data and Test Administration and Scoring booklets of Dr. Donald T. Apostle/Motion to Compel Deposition of Dr. Donald T. Apostle"; (5) "Document 134: Notice of Motion for Contempt to Donald T. Apostle, M.D."; (6) "Document 127: Notice of Limited Appearance of Michael P. Esser for Purposes of Representing Plaintiff at Competency Hearing"; (7) "Document 177: Stipulation to Lift Stay of Deposition of Dr. Donald T. Apostle"; and (8) "Documents 193 through 193-3: Administrative Motion and supporting Declaration of John J. Fritsch and exhibits thereto." Defendant's 4/25/2012 RJN, ECF No. 223. Plaintiff has not opposed Defendant's request.

Again, courts regularly take judicial notice, under Rule 201, of briefs and courts orders because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See*, *e.g.*, *Engine Mfrs. Ass'n*, 498 F.3d at 1039 n.2; *Holder*, 305 F.3d at 866; *Conopco*, 231 F.3d at 86 n.3; *Mike's Train House*, 472 F.3d at 411-12; *see also* Fed. R. Civ. P. 201.

Thus, the court will take judicial notice that the briefs, declarations, exhibits, stipulations, notices, and orders specified above were filed in this action.

**B. Plaintiff's Motion to Exclude Dr. Apostle's Records**

Plaintiff moves the court for an order excluding Dr. Apostle's subpoenaed records because they were obtained and are being offered into evidence without her consent or authorization and they are too stale to be probative of her current mental state and thus are unfairly prejudicial. Plaintiff's Motion to Exclude, ECF No. 200. Defendant opposes her motion. Defendant's Opposition to Plaintiff's Motion to Exclude, ECF No. 208.[2]

1.  Exclusion for HIPAA Violation

Plaintiff first argues that Defendant obtained Dr. Apostle's records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified at various sections of Titles 18, 29, and 42 of the United States Code). Plaintiff's Motion to Exclude, ECF No. 4-6.[3]

The relevant rules promulgated pursuant to HIPAA provide that "covered entities" such as care providers may disclose protected medical records[4] without patient consent: (1) in response to a court

---

[2] As Plaintiff points out, Defendant's opposition was untimely. *See* Reply in support of Motion to Exclude, ECF No. 212 at 2. Nevertheless, given Plaintiff's failure to show any prejudice resulting from Defendant's untimeliness, *see id.*, the court accepts Defendant's opposition.

[3] "HIPAA aims 'to improve the . . . efficiency and effectiveness of the health information system through the establishment of standards and requirements for the electronic transmission of certain health information.'" *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083-84 (9th Cir. 2007) (quoting HIPAA § 261, Pub. L. 104–191, 110 Stat. 1936 (codified at 42 U.S.C. § 1320d notes)). "The statute itself, however, does not specify either how to protect privacy or to transmit health records efficiently and effectively. Instead, it authorizes the Secretary of Health and Human Services [("HHS")] to 'adopt standards' that will 'enable health information to be exchanged electronically, . . . consistent with the goals of improving the operation of the health care system and reducing administrative costs,' and that will 'ensure the integrity and confidentiality of [individuals'] health] information [and protect against] . . . unauthorized uses or disclosures of the information.'" *Id.* at 1084 (quoting 42 U.S.C. § 1320d–2).

[4] To the extent Dr. Apostle's records can be considered "psychotherapy notes" (defined at 45 C.F.R. § 164.501), Defendant would need Plaintiff's express authorization for disclosure. 45 C.F.R. § 164.508(a)(2). Because, as explained *infra*, the court finds that Dr. Apostle's records may not be

C 09-05775 SBA (LB)
ORDER
8

order, provided only the information specified in the court order is disclosed; or (2) in response to a subpoena or discovery request if the health care provider receives adequate assurance that the individual whose records are requested has been given sufficient notice of the request, or if reasonable efforts have been made to secure a protective order.  45 C.F.R. § 164.512(e)(1)(i), (ii).[5]

Plaintiff did not consent to the disclosure of Dr. Apostle's records, no court order was issued requiring Dr. Apostle to produce his records, and no protective order has been entered in this case. Defendant subpoenaed Dr. Apostle's records in this proceeding, but it appears that Defendant did not make "reasonable efforts" to ensure that Plaintiff was given notice of the subpoena.  Under 45

---

excluded on the basis of a HIPAA violation, it is immaterial whether the records are considered "medical records" or "psychotherapy notes."

[5] 45 C.F.R. § 164.512(e), titled "Disclosures for judicial and administrative proceedings," provides in relevant part:

> (1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> > (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
> >
> > (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
> >
> > > (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
> > >
> > > (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i), (ii).

C.F.R. § 164.512(e)(1)(iii), "reasonable efforts" requires the party who serves the subpoena to provide the health provider with "a written statement and accompanying declaration demonstrating that":

> (A) The party requesting such information has made a good faith attempt to provide written notice to the [patient] . . . ;
>
> (B) The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and
>
> (C) The time for the individual to raise objections to the court or administrative tribunal has elapsed, and: (1) No objections were filed; or (2) All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

45 C.F.R. § 164.512(e)(1)(i)-(iii). There is nothing in the record indicating that Defendant complied with these requirements, and Defendant does not contend in his opposition that he did.[6] Therefore, the court finds that Defendant did not comply with the relevant HIPAA procedural requirements when he subpoenaed Dr. Apostle's records.[7]

The question that still exists, though, is whether violation of the HIPAA procedural requirements is a basis for excluding evidence. Neither party addresses the issue in detail, although Plaintiff does cite a New York appellate court opinion in which the court held that a patient's medical records obtained in violation of HIPAA are not admissible in a proceeding to compel the patient to accept mental health treatment. *See In re Miguel M.*, 17 N.Y.3d 37, 44-45 (N.Y. Ct. App. 2011).

---

[6] Defendant sent Plaintiff a letter asking her to sign a stipulation regarding her medical records. *See* Fritsch Declaration, ECF No. 117, Ex. B. Nowhere does the letter inform her (i) that he is actively seeking a subpoena, (ii) that her refusal to sign the stipulation was not sufficient to evidence her objection, but that she instead needed to formally object, or (iii) that she must object within a certain time period. *Id.* This letter does not constitute adequate notice under HIPAA. *See* 45 C.F.R. § 164.512(e)(1)(iii).

[7] In his opposition, Defendant cites *Seaton v. Mayberg*, 610 F.3d 530, 537 (9th Cir.2010) for his argument that Plaintiff does not have a constitutional right to privacy in her medical records. Defendant's Opposition to Plaintiff's Motion to Exclude, ECF No. 208 at 3-5. It is true that the issue is unclear, but the court does not see how this matters here. Plaintiff does not argue that Dr. Apostle's records be excluded on constitutional grounds; rather, she argues that they should be excluded because they were obtained in violation of HIPAA and because they are unfairly prejudicial under Federal Rule of Evidence 403.

The court's own research yielded only a smattering of authority, none of it binding. Some courts have refused to exclude evidence obtained in violation of HIPAA because HIPAA does not provide parties with a private right of action. *See Heilman v. Vojkufka*, No. CIV S-08-2788 KJM EFB P, 2011 WL 677877, at *3-4 (E.D. Cal. Feb. 17, 2011) (denying plaintiff's request for an order prohibiting defendant from using plaintiff's mental health information that was obtained in violation of HIPAA, but entering a protective order); *Smith v. Daniels*, No. 1:07-CV-2166-RWS, 2010 WL 4882950, at * 6 (N.D. Ga. Nov. 24, 2010) (denying plaintiff's request to strike medical information submitted by defendants because HIPAA provides no private right of action); *see also Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that "HIPAA itself does not provide for a private right of action.") (citing 65 Fed. Reg. 82601 (Dec. 28, 2000)). Other courts have quashed subpoenas that did not comply with HIPAA, but those courts did not bar the subpoenaing party from trying again. *Tate v. NC Pepsi-Cola Bottling Co. of Charlotte, Inc.*, No. 3:09CV36-RJC-DSC, 2009 WL 3242117, at *1 (W.D.N.C. Oct. 5, 2009) (quashing plaintiff's subpoena for his own medical records because plaintiff had not yet provided HIPAA-compliant authorization); *Hodge v. City of Long Beach*, No. CV 02-5851(TCP)(AKT), 2006 WL 1211725, at *2 (E.D.N.Y. May 4, 2006) (quashing defendant's subpoena for plaintiff's medical records because it ran afoul of HIPAA's procedural requirements but noting that defendant "is free to serve [plaintiff's doctor] with a new subpoena that is HIPAA-compliant"). And New York case law suggests that the appellate court's holding in *In re Miguel M.* similarly allows for a subpoenaing party to correct his or her failure to satisfy HIPAA the first time. *See In re Dolan*, 930 N.Y.S.2d 425 (N.Y. Sup. Ct. 2011) (after discussing *In re Miguel M.* in detail, finding that until the petitioner "properly obtain[s] respondent's medical records either by court order or by respondent's permission," "the petitioner's expert cannot testify in this [assisted outpatient treatment] proceeding"). Still other courts, in both the civil and criminal contexts, have found that the suppression of evidence simply is not a remedy for a HIPAA violation. *See Frye v. Ayers*, No. CIV S-99-0628 LKK KJM, 2009 WL 1312924, at *3 (E.D. Cal. May 12, 2009) (acknowledging that HIPAA does not provide a suppression remedy but not reaching the issue because petitioner had not suffered any prejudice as a result of the HIPAA violation); *State v. Yenzer*, 195 P.3d 271, 712-13

1 (Kan. Ct. App. 2009) ("[I]n this case, [defendant] has not made a constitutional claim warranting
2 suppression. Nor has she presented any authority to support her assertion that suppression is a
3 proper remedy for a HIPAA violation."); *State v. Straehler*, 745 N.W.2d 431, 435-36 (Wis. Ct. App.
4 2007) ("HIPAA does not provide for suppression of evidence as a remedy for a HIPAA violation.
5 Suppression is warranted only when evidence has been obtained in violation of a defendant's
6 constitutional rights or if a statute specifically provides for suppression as a remedy.").

7 While not directly on point, the most illuminating Ninth Circuit case appears to be *United States
8 v. Frazin*, 780 F.2d 1461 (9th Cir. 1986). In that case, defendant-appellant Alvin Frazin was
9 convicted for mail and wire fraud, and for aiding and abetting mail and wire fraud, under 18 U.S.C.
10 §§ 1341 and 1343. 780 F.2d at 1463. On appeal, Frazin argued that certain bank records and other
11 information, which the Government (admittedly) had obtained in violation of the Right to Financial
12 Privacy Act of 1978, 12 U.S.C. §§ 3401-22, ought to have been suppressed and excluded from
13 evidence during his trial. *Id*. at 1464.

14 In examining Frazin's argument, the Ninth Circuit first considered whether the Right to
15 Financial Privacy Act authorized a suppression remedy, and if not, whether a court could authorize
16 one under its supervisory powers. *Id*. The court first explained that the Right to Financial Privacy
17 Act "prohibits financial institutions from providing the government with information concerning
18 their customers' financial records, unless either the customer authorizes the disclosure of such
19 information or the government obtains a valid subpoena or warrant." *Id*. at 1465 (citation and
20 footnote omitted). It noted that the statute was passed in response to *United States v. Miller*, 425
21 U.S. 435 (1976), in which the United States Supreme Court "affirmed the denial of a motion to
22 suppress bank records obtained by an allegedly defective subpoena, on the ground that a bank
23 customer has no constitutionally-protected privacy interest in such records." *Id*. (citing *Miller*, 425
24 U.S. at 440). It further noted that the final version of the statute required the Department of Justice
25 to give bank customers 10 days advance notice of a government subpoena (during which time the
26 bank customer could move to quash the subpoena) and provided for civil penalties against the
27 government and financial institutions for obtaining or disclosing a customer's financial information
28 without the requisite authorization. *Id*. at 1465-66. Notably, the statute explicitly provides that

these remedies and sanctions are "the only authorized judicial remedies and sanctions" for its violation. *Id*. (citing 12 U.S.C. § 3417(d)).

The court then held against Frazin, explaining:

> Although Congress did not explicitly address the availability of a suppression remedy during its consideration of the [Right to Financial Privacy] Act, we find that remedy to be excluded under section 3417(d). Congress deliberately balanced the right of privacy and the needs of law enforcement when it established the protections and the penalties of the [Right to Financial Privacy] Act. *See* H.R. Rep. No. 1383 at 34, *reprinted in* 1978 U.S. Code Cong. & Ad. News 9273, 9306; House Hearings at 1531 (statement of Mr. Baker). To imply a suppression remedy under the Act would alter that balance. Moreover, *Miller* affirmed the denial of a suppression motion. *Miller*, 425 U.S. at 437, 96 S.Ct. at 1621. The [Right to Financial Privacy] Act responded to both the substantive and the procedural aspects of *Miller*, by providing not only a right to financial privacy, but remedies for the violation of that right as well. Had Congress intended to authorize a suppression remedy, it surely would have included it among the remedies it expressly authorized. "'In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.'" *Scientex Corp. v. Kay*, 689 F.2d 879, 883 (9th Cir. 1982) (emphasis added by court) (quoting *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 15, 101 S.Ct. 2615, 2624, 69 L.Ed.2d 435 (1981)).
>
> Because the statute, when properly construed, excludes a suppression remedy, it would not be appropriate for us to provide one in the exercise of our supervisory powers over the administration of justice. Where Congress has both established a right and provided exclusive remedies for its violation, we would "encroach upon the prerogatives" of Congress were we to authorize a remedy not provided for by statute. *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir.), *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977). The district court properly admitted the financial evidence.

*Id*. at 1466 (footnote omitted).

Although it is not perfectly analogous—Frazin, after all, was a criminal case involving the suppression of evidence at trial and a different, though similar, statute—the reasoning behind it is instructive. Like the Right to Financial Privacy Act, HIPAA's general penalty provision, 42 U.S.C. § 1320d-5(a)(1), does not include a suppression remedy. Rather, it only provides for a civil penalty that can be assessed only against covered entities and their business associates (e.g., entities that typically have health care records); the penalty can be not more than $100 for each violation; and the penalty may be imposed only by the Secretary of the DHHS. *See Crenshaw v. MONY Life Ins. Co.*, 318 F. Supp. 2d 1015, 1029-30 (S.D. Cal. 2004) (noting 42 U.S.C. § 1320d-5(a)(1) ("Congress has stated its view of the appropriate penalty for a HIPAA violation.") and declining to exclude the

1 testimony of defendant's expert witness). As other courts have noted, HIPAA does not have a
2 suppression remedy. *See Frye*, 2009 WL 1312924, at *3. And where this is the case, it is
3 inappropriate for the court to exclude evidence on this basis.[8] Accordingly, the court finds
4 Plaintiff's HIPAA argument unpersuasive.

5    2. Exclusion under FRE 403

6     Plaintiff also makes a second argument. She argues that Dr. Apostle's records should be
7 excluded under Rule 403 because they have little probative value with respect to Plaintiff's current
8 competence and, instead, carry an extreme risk of unfair prejudice. *See* Fed. R. Evid. 403 ("The
9 court may exclude relevant evidence if its probative value is substantially outweighed by a danger of
10 one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue
11 delay, wasting time, or needlessly presenting cumulative evidence.").

12     Plaintiff argues, quite reasonably (though citing only criminal cases), that a party's competence
13 is to be determined in the present. Plaintiff's Motion to Exclude, ECF No. 200 at 6-7 (citing *Rees v.*
14 *Peyton*, 384 U.S. 312, 314 (1966) ("we shall . . . direct the District Court to determine Rees. mental
15 competence in the present posture of things, that is, whether he has capacity to appreciate his
16 position and make a rational choice with respect to continuing or abandoning further litigation")
17 (emphasis added)); *Maxwell v. Roe*, 606 F.3d 561, 575 (9th Cir. 2010) (recognizing a change in
18 competency within one month) (citing *Miles v. Stainer*, 108 F.3d 1109, 1113 (9th Cir. 1997));
19 *Harris v. Driver*, 2008 WL 4279636, at *4 (N.D.W.V. Sept. 16, 2008) (inquiring into competence
20 "at the time of the hearing"). Defendant does not attempt to rebut this point. *See generally*
21 Defendant's Opposition to Plaintiff's Motion to Exclude, ECF No. 208. Plaintiff then argues, again
22 quite reasonably, that Dr. Apostle's records, which are from 2009, "have little bearing" on her
23 competence in 2012. Plaintiff's point is well-taken, but it does not mean that Dr. Apostle's records
24 have no relevance at all. Indeed, in *Maxwell*, one of the cases cited by Plaintiff, the Ninth Circuit

---

[8] At least one Ninth Circuit judge appears to agree with this conclusion. *See United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009) (Kleinfeld, J., concurring) ("HIPAA does not provide any private right of action, much less a suppression remedy.") (citing *Webb*, 499 F.3d at 1081 and *Frazin*, 780 F.2d at 1466).

C 09-05775 SBA (LB)
ORDER
14

1   explained that "it is undisputed that a 'prior medical opinion on competence to stand trial' is

2   'relevant in determining whether a further inquiry into competence is required.'" *Maxwell*, 606 F.3d

3   at 575 (quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)). This relevance, combined with the

4   fact that the records are sought to be used before a judge in a competency hearing, rather than before

5   a jury in a trial, supports the conclusion that they are not unfairly prejudicial and should not be

6   excluded under Rule 403. Plaintiff's argument is unpersuasive.

7   Accordingly, because the court finds both of Plaintiff's arguments to be unpersuasive, the court

8   DENIES her motion to exclude Dr. Apostle's medical records.

**C.  Plaintiff's Motion to Quash Defendant's Subpoena of Dr. Apostle and Defendant's Request to Present Oral Testimony from Dr. Apostle**

11  On February 17, 2012, Defendant served Dr. Apostle with a subpoena that requires his

12  appearance at Plaintiff's upcoming competency hearing and also requires him to bring his "entire

13  file(s) related to [his] examination of" Plaintiff in 2009. Esser Declaration, ECF No. 215, Ex. A.

14  Defendant requests that the court allow Dr. Apostle to present oral testimony at the competency

15  hearing. Defendant's Second Request to Present Oral Testimony, ECF No. 207.[9]

16  Plaintiff moves to quash Defendant's subpoena of Dr. Apostle. Plaintiff's Motion to Quash,

17  ECF No. 214. She also opposes Defendant's request regarding Dr. Apostle's oral testimony.

18  Plaintiff's Opposition to Dr. Apostle's Oral Testimony, ECF No. 216.

---

[9] On November 28, 2011, Defendant filed a motion asking the court for permission, under this district's Civil Local Rule 7-6, to present oral testimony of Dr. Apostle at the competency hearing that had been scheduled for January 19, 2012. Defendant's First Request to Present Oral Testimony, ECF No. 187. The court never ruled on Defendant's motion; instead, the competency hearing was continued at the parties' request to March 15, 2012 and then to May 17, 2012. 12/15/2011 Order, ECF No. 190; 2/12/2012 Order, ECF No. 204. Defendant filed an identical motion asking for permission to present oral testimony of Dr. Apostle at the May 17, 2012 competency hearing. Defendant's Second Request to Present Oral Testimony, ECF No. 207. The competency hearing subsequently was continued to June 21, 2012. Clerk's Notice dated April 25, 2012 (ECF text entry only).

There is no need for two identical motions. The court DENIES AS MOOT Defendant's first request and construes his second request as a motion to present Dr. Apostle's oral testimony at the upcoming competency hearing.

C 09-05775 SBA (LB)
ORDER

1 The parties' arguments with respect to these motions are virtually identical to those presented
2 with respect to Plaintiff's motion to exclude. For the reasons explained above, then, the court
3 believes that Dr. Apostle's appearance and oral testimony is at least relevant to the determination of
4 Plaintiff's competency. Therefore, the court DENIES Plaintiff's motion to quash and GRANTS
5 Defendant's request to present oral testimony of Dr. Apostle.

**D. Defendant's Motion for Competency Determination**

As described above, Defendant moves for the court to determine whether Plaintiff is competent to proceed *in pro per* in this action. Defendant's Motion for Competency Determination, ECF No. 115. In support of his motion, he argues that Dr. Apostle's records indicate that Plaintiff previously was diagnosed with a mental illness and that her illness renders her incompetent to act as her own attorney in this action. *Id*. at 4-5. He also argues that Plaintiff's claims of competence are barred by the doctrine of judicial estoppel. *Id*. at 5-6. Plaintiff, through appointed counsel, opposes Defendant's motion. Plaintiff's Opposition to Defendant's Motion for Competency Hearing, ECF No. 202.

1. Judicial Estoppel

The court addresses Defendant's judicial estoppel argument first.[10] The basis for Defendant's argument is his claim that the Sonoma County Superior Court dismissed the criminal case against Plaintiff because it determined that Plaintiff was not competent to stand trial. Defendant's Motion for Competency Determination, ECF No. 115 at 5 ("The state court concluded that [Plaintiff] was not mentally competent to represent herself in pro se in defense of the criminal charges, and

---

[10] Judicial estoppel is an "equitable doctrine invoked by a court at its discretion" when necessary "to protect the integrity of the judicial process." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (citations omitted); *see Morris v. State of Cal.*, 966 F.2d 448, 453 (9th Cir. 1991). Several factors typically inform the decision whether to apply the doctrine of judicial estoppel: (1) whether "a party's later position [is] 'clearly inconsistent' with its earlier position"; (2) whether the party has "succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (citations omitted).

[Plaintiff] was successful and able to obtain a dismissal of the criminal case.").

Defendant's characterization of the Sonoma County Superior Court's dismissal in inaccurate. As Plaintiff points out, although the Sonoma County Superior Court did appoint a public defender pursuant to California Penal Code § 1368 (requiring a court to appoint an attorney for a defendant in a criminal case if a doubt arises in the mind of the judge as to the defendant's mental competence), the court dismissed the charges against Plaintiff pursuant to California Penal Code § 1385 (allowing a court to dismiss charges against a defendant "in the interests of justice"). The court did not at any time make any finding with respect to Plaintiff's competence or cite to California Penal Code § 1370.2, the statute governing the dismissal of misdemeanor criminal charges against defendants who are found to be incompetent. Because the Sonoma County Superior Court never made any findings as to Plaintiff's competence and did not dismiss the charge against Plaintiff under the statute governing dismissals of charges against incompetent defendants, Defendant's judicial estoppel argument fails.[11]

2. Competency Hearing

As discussed in the section on Plaintiff's motion to exclude Dr. Apostle's records, the court found that Dr. Apostle's records from 2009 are relevant to the competency inquiry here but are not on their own dispositive of the issue of Plaintiff's competence in 2012. *See Maxwell*, 606 F.3d at 575 ("[I]t is undisputed that a 'prior medical opinion on competence to stand trial' is 'relevant in determining whether a further inquiry into competence is required.'") (quoting *Drope*, 420 U.S. at 180). The issue then is, how are the parties to move forward with the competency inquiry.

One issue is whether Plaintiff should undergo a new medical examination to allow the court to make a competency determination based on fresh evidence and expert opinion testimony. If Plaintiff did not cooperate, the court then would have discretion to dismiss the case without prejudice. *See Krain*, 880 F.2d at 1121. Indeed, Plaintiff said in her motion that she prefers dismissal without prejudice to the appointment of a *guardian ad litem*. Plaintiff's Opposition to

---

[11] The court notes that it appears Defendant abandoned this argument, as he did not address it in his reply brief. *See* Defendant's Reply in support of Motion for Competency Hearing, ECF No. 205.

Defendant's Motion for Competency Hearing, ECF No. 202 at 14. The court believes a new evaluation is appropriate. But at the hearing, the parties disputed who should pay for the evaluation. Also, the court discussed with Plaintiff's counsel how Plaintiff might be able to provide relevant information through, for example, any physician that she has already. Finally, Plaintiff's counsel suggested that—given that the court denied the motion to quash the medical records—the first step should be a hearing with Dr. Apostle. At that hearing, the court could consider that evidence and any other evidence that Plaintiff might offer. If that were not sufficient to satisfy the court about Plaintiff's competency, then the court could order a separate competency evaluation. Also, because the competency assessment implicates Plaintiff's due process rights, she must be present at the evidentiary hearing. That would give the court the opportunity to inquire whether she would cooperate with the evaluation and to provide her with direct notice that the consequence of non-cooperation might be dismissal of her case without prejudice. It also would postpone the issue of who pays for the new evaluation until the record is clear that a new evaluation is needed and Plaintiff would cooperate.

Accordingly, with the parties' agreement, the court set an evidentiary hearing on September 27, 2012. At that hearing, Defendant will offer Dr. Apostle as a witness, and the parties may present any other testimony or evidence. They should meet and confer to set a schedule for the exchange of any further evidence. They shall meet and confer at least three weeks before the hearing about their pre-hearing filings. Two weeks before the hearing, they should file a joint pre-hearing statement with all undisputed facts. They should attach to that statement the following: (a) the parties' specific, signed stipulations that can be introduced as evidence at the hearing; (b) a joint exhibit list that complies with the requirements of the court's pretrial order (attached); and (c) each party's separate witness list that complies with the requirements of the court's pretrial order.

The court further orders that Ms. Elder-Evins must appear personally at the evidentiary hearing.

Another issue is that so far, Plaintiff's counsel has not reviewed the medical records because of Plaintiff's motion to suppress the records. Given that the court has denied that motion, the court directs the parties to meet and confer to reach a protective order to protect the confidential medical information in the case. They then should submit their stipulated protective order for this court's

review and approval.

The court also was concerned that defense counsel had subpoenaed Dr. Apostle to appear in court with his full medical file. That suggested that defense counsel might not have the full file already, and that in turn is a concern because Plaintiff's due process interest in a competency hearing requires prior notice to her of the materials that Dr. Apostle relies on. As part of their meet-and-confer process, the parties should ensure that Plaintiff has a full opportunity to review in advance the medical information to be submitted at the hearing. If Plaintiff plans to offer her own assessment, the parties should discuss that at the conference, too.

The court also issues this ruling about who pays for any further competency evaluation. If the court orders it, Defendant—as the party who moved for the determination of Plaintiff's competency—shall pay for it. Although there is a dearth of authority on this issue in the Rule 17 context, courts appear to require the moving party to pay for the examination in the Rule 35 context. *See Duarte v. Wong*, No. C 05-01374 CW (PR), 2007 WL 2782940, at *9 n.4 (N.D. Cal. Sep. 24, 2007) ("When the mental or physical condition of a party (or a person under the custody or legal control of a party) is at issue in a lawsuit, Rule 35 of the Federal Rules of Civil Procedure allows the court to order that person to submit to a physical or mental examination. The examination must be done by a suitably licensed or certified examiner, such as a physician or psychiatrist. The party who requested the examination must pay for it."); *Klein v. Yellow Cab Co.*, 7 F.R.D. 169, 170 (N.D. Ohio 1944) ("The expense of the examination provided for shall be borne by the [moving] defendant."); *see also* 8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure*, § 2234 (3d ed. 2010) ("The party being examined must be his or her own expenses for coming to the examination and bear the loss of time thus caused. The moving party must bear the expense of the examination itself.") (citations omitted). In a written order before the June 21, 2012 hearing, the court informed the parties that they should be prepared to discuss at the hearing the issue of who should pay for a new competency examination. 6/19/2012 Order, ECF No. 227 at 1-2. Defendant did not cite any authority on this issue although it said that it did not want to pay. Without any authority to the contrary, the court believes that the analogy to the Rule 35 context is appropriate and sees no reason to depart from the reasoning mentioned above.

C 09-05775 SBA (LB)
ORDER
19

Another issue that may come up at the September 27, 2012 hearing is who should conduct the new examination. Defense counsel noted that Dr. Apostle is used by the court system in Sonoma county, and the court observed that the district court uses Dr. John Chamberlain of the University of California - San Francisco's Department of Psychiatry. Because the court may order that further evaluation, the parties should meet and confer before the September 27, 2012 hearing to select a qualified doctor.

## V.  CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's motions to exclude and to quash and GRANTS Defendant's motion to present oral testimony. Furthermore, the court orders an evidentiary hearing to take place at 2:00 p.m. on September 27, 2012. Ms. Elder-Evins shall appear at that hearing.

**IT IS SO ORDERED.**

Dated: July 3, 2012

_____
LAUREL BEELER
United States Magistrate Judge